Good morning. My name is John Pope. I represent the petitioner in this case, Mr. Moises Morales. The petitioner comes before you and has asserted that the Board of Immigration Appeal has erred in his case. He raises two issues. One is a conviction under Section 273.5 of the California Penal Code, a crime involving moral turpitude. And the second issue is, would a waiver of inadmissibility under Section 212H of the Immigration and Nationality Act render him eligible for relief under cancellation of removal for a non-permanent resident under Section 240AB1 of the same Immigration and Nationality Act? On the first issue, as to whether 273.5 of the California Penal Code is a crime involving moral turpitude, the petitioner would submit to the court that this issue was previously addressed in the case of Grieta. In Grieta, the court found that because of the nature of the spousal relationship and the traumatic conditioning occurring, that an offense under 273.5 is a crime involving moral turpitude. And I'm sorry, I didn't give the court the site. Grieta versus the INS 12, Fed 3, 919 from the Ninth Circuit in 1993. It held that spousal abuse is an act of baseness and depravity contrary to accepted moral standards, and is, and as willfulness is part of one of its elements, we hold that it is a crime involving moral turpitude. We would submit to the court that there is one other issue that the court did not address in that case, and that is the nature of the injury. As the court has recently announced in several cases, the first being Galeana versus Galeana-Mendoza, which is 465, Fed 3, 1054. And Fernandez-Ruiz versus Ashcroft, which is 468, Fed 3, 1165. And most pronounced, or the most pertinent of these is Inres-Sanudo. Sanudo is 23 I and N, decision 968 from the BIA in 2006. These cases have all addressed whether or not the injury that is received by a victim is such that it would render a conviction under the statute to be a crime involving moral turpitude. More specifically, in Inres-Sanudo, looking at California Penal Code 243E, which is the domestic violence statute in California, the court to constitute this offense was not enough to bring this to the level of a crime involving moral turpitude. There must be a showing of actual physical harm. Now, 273.5 as a statute calls for a traumatic condition to have occurred. But if you read the last paragraph of the statute, the statute said it can be a minor or a significant injury. And we would submit to the court that a violation of section 273.5 could be committed with a nonsubstantial injury. Let me just step back. Go ahead. Well, my question is this. We are a three-judge panel. And except in limited circumstances, we have to follow circuit precedent. So why are we not bound by Gregada on the first issue? Because, Your Honor, I believe that the court did not fully address the question of injury in Gregada, that the court could go further. Do we have any precedent that says if a three-judge panel makes a holding but doesn't fully address some issue, that a later panel can disregard their opinion? I mean, we could say it should be heard in bank. And an NBank court could change that. But unless you're under the standards in Miller v. GAMI, where there's a supervening higher authority, we can't puzzle this to how we could evade the Gregada holding. I don't think we could. Just as one judge, I don't see how we could do it just because we think they didn't fully address damage. Go ahead. I thought I'd let you know my concern. Yes, Your Honor. And I would address that by saying that traditionally when the court has not addressed all of the elements of the predicate offense, I believe that the court is well within its right to address that issue in a later case. And again, one of the elements of this predicate offense is injury. And as the court has said in cases like Fernandez-Ruiz and Galeano, it needs to be more of a significant injury than just a mere touching or the so-called willful pinch that could cause a conviction to be had under 273.5. If you are correct, if we could view Gregada and Galeano and Sununu in some complementary fashion, if that were possible, would we then have to engage in a modified categorical approach here? I would believe so, Your Honor. In which case it would have to be sent back? Yes, Your Honor. We would have to be remanded for an examination under the modified categorical approach as to whether or not all of the predicate, all of the elements of the predicate offense have been proven by the record of conviction. So in your view under 273.5, which is our statute here, right? Yes. And it's the one in Gregada, you could be convicted of that for just pinching or giving a little, like, get out of here kind of thing? Your Honor, if the pinch produced a bruise, yes. That would be the answer. So you need some injury, but not traumatic injury? Not substantial, Your Honor. The statute itself says a minor injury is enough to suffice. So your focus is on the nature of the injury, not on the nature of the recipient. For example, a former cohabitant or somebody like that could also be included? Yes, Your Honor, that's correct. Okay. If I may use the rest of my time to talk about the other issue, Your Honor, the so-called waiver stacking issue. The respondent, excuse me, the petitioner is requesting and has requested that he be allowed to use a 212H waiver in order to cure his ineligibility for 240AB. Now there is precedent for that. The petty offense exception to a crime involving moral turpitude under section 212A2AIII allows for the automatic waiver of a crime involving moral turpitude where the sentence imposed cannot be more than one year and the defendant does not receive more than six months in jail. Now the petty offense exception operates with 240AB, cancellation of removal. If a respondent in immigration proceedings or the petitioner here has a CIMT that qualifies for the petty under 240AB1. Additionally, when an immigrant is attempting to adjust his or her status under section 245 of the Immigration and Nationality Act, the law permits multiple waivers of inadmissibility, such as the 212H criminal waiver, the 212I false documents waiver, a 212A9C waiver for illegal presence or for a prior deportation. These can be used multiply with an adjustment of status. Well, cancellation of removal under 240AB1 is an adjustment of status. The net result, if you are successful, is that the court grants you your lawful permanent residence. The government would rely very heavily on the Becker case, saying that it may waive inadmissibility, but it doesn't take it away for immigration purposes. But I think you need to go further than that. You have to say it does no where has Congress precluded the use of a 212H waiver with a 240AB1. Thank you, Your Honor. I'm sorry I've lost my time. Thank you. May it please the Court. I'm Lindsay Williams and I represent the Respondent in this matter. Today the Respondent respectfully requests that this Court affirm the decision of the Board of Immigration Appeals for the following reasons. First, the immigration judge's finding that the petitioner's 2003 felony conviction for infliction of corporal injury on a cohabitant in violation of California Penal Code 273.5 qualifies as a crime of moral turpitude and is in accordance with this Court's case law as seen in Gregada v. INS. Second, the Board was correct in its holding that a waiver of inadmissibility under 8 U.S.C. 1182H would not Do you agree with your opponent that Gregada, whatever it is, is not a complete analysis of the statute? Well, in Gregada, the Respondent's position is that Gregada is dispositive of this matter. In that case, this Court I think what he's getting at, your point, is that, well, it's not dispositive if there's a point that the Gregada panel did not consider and that point would be determinative in this case. I think that's sort of what he's saying, right? That is what he's saying, and our position is that that is incorrect, that Gregada looked at 273.5 and looked at several, there were several aspects of it that made this Court determine that it was a crime of moral turpitude. The first was the fact that if we look at the statute, it reads that any person who willfully inflicts upon a number of people corporal injury resulting in a traumatic condition. So, therefore, the first thing that the Court looked at is the fact that there was this willfulness aspect, that the person had to intend to inflict corporal injury. The second thing that it had to do, the second thing that the Court looked at is the fact that it was on, in Gregada it was a spouse, so there was a trust relationship, more likely than not, when a person is dependent upon the other spouse. So that aspect of it also added to it. And then also the fact that there was the traumatic condition. And, yes, the traumatic condition is defined in 273.5 as being a condition of the body such as a wound or external or internal injury, whether of a minor or serious nature caused by physical force. So those were the three things. Now, turning to Fernandez-Ruiz and Galena Mendoza, those cases can be distinguishable because in both of those cases they were dealing with assault and or battery statutes. So in Fernandez-Ruiz, this Court, in comparing it to Gregada, said that the statute at issue in Fernandez-Ruiz required neither willful conduct nor conduct resulting in bodily injury that was more than insubstantial. So the statute in Fernandez-Ruiz, this Court held, could include acts of recklessness, could include threats, just verbal threats, could include conduct that causes the most minor or insignificant injury. And I ask you on that point, as you were just reading from Gregada as to what the statute said, it said minor or serious. Serious. Whether of a minor or serious nature. Nature. So the question I have is, then you go to Galena, which is then saying, well, this isn't of a minor, you know, this could be of a minor nature. So how do those fit? Because his example of a bruise or even just a touching that would be minor as opposed to serious seems to me to be kind of a gap in the Gregada analysis. Well, I think that the more correct way to view it, and I'm sorry, I'm trying to find. I think the more correct way to view it is that there are three factors that go in together to make it a crime of moral For instance, they looked at battery and they said, okay, battery is a term of art that has been defined as force against a person that need not be violent or severe nor cause bodily injury, harm or pain. It may not even leave a mark. So that's one prong that they're looking at. Even that is distinguishable from Gregada, because in Gregada we have the willful infliction of corporal injury. So first of all, we have corporal injury. So it can't be that I've insulted you or poked you with a pencil. It's corporal injury that causes a condition of the body. And so they give as an example a wound or an external or internal injury, whether of a minor or serious nature. So I think that's very different from the definition of battery, which doesn't have to even leave a mark as compared to 273.5, where it has to be a condition of the body, a wound that is caused by physical force. But it could be minor. Right. It could be minor, but I think if you look at ‑‑ I'm looking at Galena Mendoza. This is at 1060, 1061. They give a couple of examples, throwing a cup of cola on the lap of someone to whom one is engaged, lightly shoving a cohabitant or poking the parent of one's children rudely with the end of a pencil are all offensive touchings. Well, none of those would qualify as a traumatic condition under 273.5. So I think we're talking about two separate things. But then I think it's really important also to look at, in Galena Mendoza and Fernandez Ruiz, the intent was important. In Galena, this court noted that a person need not have the intent to injure. They just have the intent to commit a battery. Here, in 273.5, you have to have the intent to willfully inflict corporal injury resulting in traumatic condition. So it's not just that I ‑‑ What do you think that means, traumatic condition? Do we have ‑‑ Well, it's defined ‑‑ traumatic condition is defined as C. I'm sorry, as a what? I'm sorry, traumatic ‑‑ It's defined as a what? It's defined as a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature caused by physical force. It's on page 9 of Respondent's Brief. So, I mean, if you look at the examples that this court gave out in Galena Mendoza, you know, a parent of one's children with a pencil, none of those are ‑‑ none of that is going to fall within the 237.5 definition. Because, first of all, I have to ‑‑ You don't think throwing a Coke at somebody and whacking them in the head would be more than a minor injury? Well, I think that, and this is the part that if you were to throw a Coke at somebody under the battery statute, I could have gotten mad at you, you could have said something to me, and I throw the Coke at you, but I don't mean to hit you, or I just mean for it just to, you know, just touch you lightly, and you end up on the floor. Well, I didn't intend for you to end up on the floor. That's not required by the battery statute. That is required by 237.5, and that's why the intent part of it is important. It is a willful infliction of corporal injury resulting in a traumatic condition. I have to intend that I am going to corporally injure you, and it's going to result in a traumatic condition. All of that is the intent that I have when I say ‑‑ I think the willful doesn't go to ‑‑ you don't have to intend the final result. You have to willfully do the conduct. I mean, that's typically how, in criminal law, the willfulness is an adjective in that regard, I believe. Well, except that in Galena-Mendoza, when this Court was distinguishing Gregata from the statute in Galena-Mendoza, one of the things this Court said was that under that statute, the person need not have the intent to injure. They only had to have the intent to make the contact or to do the act. Whereas here, I think if you can read Section A, the intent goes beyond inflicting corporal injury. I mean, but even inflicting ‑‑ Except that the State courts have interpreted the intent requirement as only requiring a general intent to commit the act. That's all that's required under State law. I believe under Battery, that's correct. That's the State interpretation of 273.5. 273. I mean, I think if we're in a spousal or a domestic relationship and I have a Coke in my hand, all that's intended, I intend to throw the Coke. I don't have to intend that it's going to cause you the bruise or the battery into your eye. I know that I'm throwing the Coke and I know that the Coke is going to land. That's my willful aspect of it. Correct. And I see my time is almost up, so if I can just briefly wrap up. I do believe that Gregata is directly on point, and there's no reason for this Court to stray from that. I think that it is distinguishable from Fernandez-Ruiz and Galena-Mendoza. Turning to the second issue, a waiver of inadmissibility is exactly that. It waives your inadmissibility. It allows you to be admitted into the country. Under the cancellation of removal statute, one of the explicit provisions that was included by Congress is that you are not eligible for cancellation of removal if you have been convicted of certain crimes. And in this particular case, the petitioner has been convicted of a crime that bars him from eligibility for cancellation of removal, and a waiver of inadmissibility would not change that. There's no case that supports your interpretation, is there? Well, I believe in our brief we cite a certain case. To be fair, I guess there's no case going the other way either. There is absolutely no case going the other way. There's no case right on point that you can point to that says this is the law of the circuit? Not this exact situation, but we definitely have cases that we've cited in our briefs that say that an 1182-H waiver of inadmissibility only waives your inadmissibility. It gets you in the country to be able to adjust your status. But if the adjustment of status statute, say here we're dealing with the cancellation of removal statute, bars you because you've committed a crime, the fact that you're admissible doesn't help you to get cancellation of removal. So your argument just simply is that that case means what it says. Right. All right, thank you. Thank you. I do want to thank both counsel. I think these questions of crime of violence and moral tupertude are very tricky statutory questions, and I think Congress had no idea when they enact these that we would be engaged in such careful parsing of the statute. So I appreciate the briefing in this and also your arguments. I think these are difficult and harder questions than they might seem on the surface. So thank you. The case of Morales-Garcia v. McCasey is submitted.
judges: Tashima, McKeown, Gould